United States District Court
Northern District of Ohio

**Dianna Perry**,
    Plaintiff,

v.

**Credit One Bank, N.A.**,
    Defendant.

**Case No. 1:17-cv-562**

**Complaint**

**Jury Trial Demanded**

1.    Plaintiff Dianna Perry brings this action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the unlawful and abusive attempts by Credit One Bank, N.A. ("Defendant"), and its agents to collect a debt that was not owed by Plaintiff, causing her damages.

2.    For purposes of this Complaint, unless otherwise indicated, "Defendant" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of Credit One Bank, N.A.

### Parties

3.    Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of Ohio. Plaintiff is a "person" as defined by 47 U.S.C. § 153 (39) and sought or acquired any goods or services, primarily for personal family or household purposes, including the credit transactions associated with such purchases.

4.    Defendant is a national banking association operating from an address of 585 Pilot Road, Las Vegas, Nevada. Defendant is a person who, in the ordinary course of business, regularly, on behalf of itself or others, engages in "debt collection."

## Jurisdiction and Venue

5. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 47 U.S.C. § 227, and under 28 U.S.C § 1367 for pendant state law claims.

6. This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600 ("NDTPA"), as well as tortious conduct and breach of contract.

7. Venue is proper in this District pursuant to 28 U.S.C § 1391(b), in that Plaintiff resides in this District, Defendant transacts business in this District and the acts giving rise to this action occurred in this District.

## Factual Allegations

8. Plaintiff was at all times relevant to the claims alleged, the subscriber to cellular telephone services for the telephone number 216-XXX-2006, where she received the calls from Defendant complained of herein.

9. Beginning on or before August 2012, Defendant initiated multiple telephonic communications from various telephone numbers to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and/or an artificial or prerecorded voice, as prohibited by 47 U.S.C. § 227 (b)(1)(A).

10. This ATDS used by Defendant to call Plaintiff had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

11. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff. But Plaintiff never had an account with Credit One nor did she engage in business in any way with Defendant. A person unknown to Plaintiff stole her identity at some point prior to August 2012 and

when the thief failed to pay the debt he or she incurred, Defendant began its collection attempts from Plaintiff, believing her to be responsible for the debt.

12. Despite her repeated protests an explanations, Credit One continued it collection efforts, making repeated calls to her cellular telephone number ending 2006.

13. The calls came virtually every day and often more than once per day. A list of the calls presently known to Plaintiff is set forth as Exhibit "A" to this Complaint and is incorporated herein by reference.

14. These calls were harassing, repetitive, and deliberately calculated to intrude on Plaintiff's privacy.

15. In total, Plaintiff received at least 2,095 calls from Defendant on her cellular telephone number through January 5, 2015.

16. The calls from Defendant continued after that date and Plaintiff seeks discovery to determine the exact number and timing.

17. None of the calls were made with Plaintiff's express consent.

18. Each of the calls were made by Defendant or a third party acting on its behalf and under its control using telephone equipment that meets the definition of an "automatic telephone dialing system" under the TCPA.

19. Plaintiff answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling, explaining over and over again that she was not the person they were looking for and didn't owe any debt to Defendant.

20. Despite these clear and unmistakable requests, the calls to Plaintiff's cellular telephone continued. For example, on August 12, 2012, Plaintiff answered a call from Defendant at approximately 11:49 am Eastern Time and asked what the call was about. She'd received seven calls the day before and had received five calls earlier that morning. Plaintiff listened to the collection agent

Complaint — 3

and explained that they had the wrong person, that she didn't owe the debt, and that she had no idea who had defrauded the Bank.

21. A few days went by and Plaintiff thought the matter was resolved, but on August 17, 2012, the calls from Defendant resumed in earnest. That day, Defendant placed thirteen (13) calls to Plaintiff's cellular telephone beginning at 8:13 am through 2:53 pm.

22. Defendant made nine (9) calls the next day, August 18, 2012, and twenty-two (22) calls the day after, August 19, 2012, from 8:09 am through 2:54 pm.

23. Several of the calls when answered played a pre-recorded message.

24. At various times, Defendant programmed its telephone dialing system to show as the incoming caller ID number telephone numbers in area code assigned by the North America Numbering Plan to addresses in Ohio.

25. Upon information and belief, Plaintiff alleges that Defendant has no call center in the State of Ohio and instead used false and misleading caller ID information in a calculated effort to increase the rate at which Plaintiff and other consumers would answer Defendant's collection calls.

26. Plaintiff on numerous occasions did answer Defendant's collection calls when showing a nearby caller ID area code, believing it to be a friend or relative, or work-related business.

27. When Defendant began employing false and deceptive caller ID information for its incoming calls, Defendant tricked Plaintiff into answering many calls she did not intend to take.

28. Plaintiff also began to ignore or send to voice mail many incoming calls from numbers she did not recognize, out of frustration in dealing with Defendant's unwanted and intrusive calls. In doing so, she missed many

important communications from friends and family, as well as many work-related calls.

29. Plaintiff's cellular telephone number was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls and texts pursuant to 47 U.S.C. § 227(b)(1).

30. These telephone communications constituted communications that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

31. Plaintiff did not provide prior express consent to receive calls or messages placed utilizing an ATDS, as required by 47 U.S.C. § 227 (b)(1)(A).

32. These telephone communications by Defendant, or its agent, violated 47 U.S.C. § 227(b)(1).

33. Additionally, Defendant used an artificial and/or pre-recorded voice to make calls to Plaintiff's cellular telephone, which is a separate and independent violation of the TCPA and makes Defendant liable for additional statutory damages.

34. Defendant has its principal place of business and headquarters, along with a substantial call center, at its Pilot Road offices located in Las Vegas, Nevada. All of its policy-making executives work there and formulate and carry out policy there.

35. Upon information and belief, many of the calls complained of herein were originated from Las Vegas, Nevada. For the calls that originated elsewhere including calls placed by third party vendors calling on behalf of Defendant and in Defendant's name, each call was made under the specific direction and control of Defendant's Las Vegas personnel. Furthermore, each day's calling was reported back to Defendant and data was kept at Defendant's data warehouse in Las Vegas.

36. As such, Defendant is governed in part by the laws of the State of Nevada, including its consumer protection and deceptive trade practices laws.

37. Nevada law provides that, "A person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly ... [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services." Nev. Rev. Stat. § 598.0923(3).

38. Pursuant to the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, violations of Nev. Rev. Stat. § 598.0923 constitute "consumer fraud." Nev. Rev. Stat. § 41.600(2)(e).

39. The TCPA is a federal statute relating to the sale or lease of goods or services and as such violating the TCPA is also a violation of the NDTPA.

40. Through this conduct of calling Plaintiff and causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number, Defendant engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of the debt, in violation of 15 U.S.C. § 1692d(5), which is incorporated into Nevada law as a deceptive trade practice. Through this conduct, Defendant violated the NDTPA.

41. Through this conduct of calling Plaintiff continuously after Plaintiff informed Defendant numerous times that Plaintiff wished the calls to cease, Defendant used false, deceptive, or misleading representations in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e, which is incorporated into Nevada law as a deceptive trade practice. Through this conduct, Defendant violated the NDTPA.

42. Through this conduct of calling Plaintiff using deliberately false caller ID area code information, Defendant used false, deceptive, or misleading representations in connection with the collection of any debt, in violation of 15

U.S.C. § 1692e, which is incorporated into Nevada law as a deceptive trade practice. Through this conduct, Defendant violated the NDTPA.

43. Each of the above-described practices and conduct outlined in the preceding paragraphs also constitute unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f, which is incorporated into Nevada law as a deceptive trade practice. Through this conduct, Defendant violated the NDTPA.

44. Through this conduct of calling Plaintiff by means of an ATDS to a telephone number assigned to cellular service without first obtaining Plaintiff's express consent in order to collect on a consumer debt, Defendant used unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f, which is incorporated into Nevada law as a deceptive trade practice. Through this conduct, Defendant violated the NDTPA.

45. Plaintiff felt frustrated, angry, and helpless as a result of the calls. The unrelenting, repetitious calls disrupted Plaintiff's daily activities and peaceful enjoyment of her personal life.

46. The calls placed by Defendant to Plaintiff were extremely intrusive into Plaintiff's personal life by both pattern and volume, and had a detrimental effect on her relationships with close family members. The calls placed by Defendant also intruded into Plaintiff's professional life, forcing her to waste time weeding out the work-related calls from the non-work-related calls.

47. Defendant is no stranger to TCPA litigation. On January 24, 2013, a consumer filed a putative national class action against Defendant alleging violations of the TCPA for making calls using an ATDS to call her cell phone. *Foote v. Credit One Bank, N.A.*, Case No. 2:13-cv-512 (C.D.Cal.). This lawsuit was resolved but during the time when Defendant was placing calls to Plaintiff complained of here, it was facing at least three other national class actions for

Complaint — 7

similar TCPA claims. See, e.g., *Bridge v. Credit One Financial, d/b/a Credit One Bank, N.A.*, Case No. 2:14-cv-1512 (D.Nev., filed Sept. 17, 2014); *Kristensen v. Credit One Bank, N.A.*, Case No. 2:14-cv-7963 (C.D.Cal., filed Oct. 15, 2014); *A.D. v. Credit One Bank, N.A.*, Case No. 1:14-cv-10106 (N.D.Ill., filed Dec. 17, 2014).

48. Each of these putative class actions also tolled the statute of limitations on claims that were asserted or could have been asserted by class members there. *Am. Pipe and Const. Co., v. Utah*, 414 U.S. 538 (1974)

49. Despite knowing its obligations under state and federal law to refrain from placing unconsent calls to consumers' cell phones, Defendant nevertheless placed thousands of calls to Plaintiff's cell phone in deliberate disregard of those duties and obligations.

## First Claim for Relief

**Telephone Consumer Protection Act — 47 U.S.C. § 227(b)(1)**

50. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

51. Within a four-year period immediately preceding this action, Defendant made thousands of calls to Plaintiff's cellular telephone service using an automatic telephone dialing system and/or an artificial or prerecorded voice in violation of the TCPA.

52. As a direct and intended result of the above violations of the TCPA, Defendant caused Plaintiff to sustain damages.

53. Defendant did not have prior express consent from Plaintiff to use an ATDS or to employ an artificial or prerecorded voice to call the Plaintiff's cellular telephone.

54. Under 47 U.S.C. § 227(b)(3)(B), Plaintiff is entitled to statutory damages under the TCPA of not less than $500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B).

55. Defendant willfully and knowingly violated the TCPA, and as such Plaintiff is entitled to as much as $1,500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(C).

56. Plaintiff is entitled to injunctive relief prohibiting such conduct in the future.

## Second Claim for Relief
## NDTPA — Nev. Rev. Stat. § 41.600

57. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

58. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the NDTPA, including but not limited to each and every one of the above-cited provisions of the TCPA and FDCPA, as well as the tortious conduct described above. Taken as a whole, the years-long interactions with Plaintiff in calling her dozens of times per day, every day for weeks at a time, all in pursuit of a relatively small-dollar debt, constitutes an unfair trade practice in violation of the NDTPA, separate and apart from Defendant's multiple violations of state and federal consumer protection laws.

59. Defendant's conduct taken as a whole also violates the implied covenant of good faith and fair dealing made a part of every contract by Nevada law and constitutes an unfair trade practice in violation of the NDTPA, separate and apart from Defendant's multiple violations of state and federal consumer protection laws.

60. As a result of Defendant's violations of the NDTPA, Plaintiff is entitled to any actual damages pursuant to NRS § 41.600(3)(a); punitive damages

Case: 1:17-cv-00562-CAB Doc #: 1 Filed: 03/17/17 10 of 11. PageID #: 10

pursuant to NRS § 598.0977; reasonable attorney's fees and costs pursuant to NRS §§ 41.600 and 598.0977 from Defendant.

### Third Claim for Relief

### Negligence

61. Plaintiff re-alleges and incorporates by reference the above paragraphs as through set forth fully herein.

62. Plaintiff believes and thereon alleges that Defendant owed various duties to Plaintiff pursuant to the statutes described herein. Specifically, Defendant owed a duty to Plaintiff with regard to the manner of debt collection practices.

63. Defendant breached Defendant's respective duties by engaging in the acts described herein each in violation of the statutes alleged herein.

64. Plaintiff asserts that Defendant is both the actual and legal cause of Plaintiff's injuries.

65. Plaintiff believes and thereon alleges that as a proximate result of Defendant's negligence, Plaintiff has suffered significant emotional distress.

66. Due to the egregious violations alleged herein, Plaintiff asserts that Defendant breached Defendant's respective duties in an oppressive, malicious, despicable, gross and wantonly negligent manner. As such, said conduct Defendant's conscious disregard for Plaintiff's rights entitles Plaintiff to recover punitive damages from Defendant.

### Fourth Claim for Relief

### Invasion of Privacy

67. Plaintiff re-alleges and incorporates by reference the above paragraphs as through set forth fully herein.

68. Plaintiff had an objectively reasonable expectation of privacy at home, at work, and when conducting her daily affairs, to expect that she would not be subject to a dozen or more phone calls every day for months at a time. Defendant's unrelenting campaign of harassment by placing thousands of repeated phone calls intruded into this reasonable expectation of privacy.

69. The frequency and cumulative volume of Defendant's phone calls were received in a manner that would be highly offensive to a reasonable person in the same or similar circumstances.

## Prayers for Relief

Wherefore, Plaintiff respectfully prays that judgment be entered against Defendant for the following:

1. An injunction against the calling of Plaintiff's cellular telephone by Defendant and its contractors, agents and employees;
2. Statutory damages pursuant to 47 U.S.C. § 227(b)(3);
3. Actual and punitive damages pursuant to NRS §§ 41.600 and 598.0977;
4. General, special, and punitive damages according to proof;
5. Costs of litigation and reasonable attorneys' fees;
6. Such other and further relief as may be deemed just and proper.

Dated:   March 17, 2017         Ankcorn Law Firm, PC

*/s/ Mark Ankcorn*

1060 Woodcock Road, Suite 128
Orlando, Florida 32803
mark@ankcornlaw.com
N.D. Ohio Bar No. __
Florida Bar No. 55334

Attorneys for Plaintiff

Complaint — 11